and we'll hear argument next in In Re The Containership Company 19-3394. Mr. Singleton. Yes, may it please the court. I'm Richard Singleton of Blank Rome for Appellant The Containership Company. If it would please the court, I'll refer to Containership Company as TCC during my argument. With me on the brief and on this argument is my partner, Mr. Jeremy Hershaft. There's only one issue properly before this court on this appeal, and that is whether the trial court erred in construing the contract between TCC and appellants as to preclude TCC from recovering its contractually stipulated liquidated damages for appellees' failure to ship their minimum quantity. TCC respectfully submits that by misconstruing certain portions of the contract, the trial court's decision creates an unjustified windfall for appellees and works a commercial injustice on TCC and for that reason must be reversed. Let me explain. This case concerns the construction of 27 separate service contracts authorized under the Shipping Act of 1984, the terms of which are identical. Essentially, the contracts allowed appellees to elect how many containers it desired to ship with commitment to lower the freight rates they would be charged. The contract required appellees to ship evenly, and that's a quote, and this is a quote as well, as far as possible, end quote, over the contract term. The shippers failed miserably in satisfying their obligations under the contract. After 11 months, with only one month remaining on the contract term, they had only shipped 32% of their collective committed quantity, which is a shortfall of over 100,000 containers for the total shippers and of the appellees here, over 70,000. Because of this, TCC could no longer stay in business and was forced to discontinue its service. Can I ask you a question about the as far as possible clause about the even shipping? So, it might be a reasonable inference that if they have only shipped 32% up until the very last couple of voyages, maybe they're not separating them out as far as possible. But the clause doesn't require them to ship evenly, like the same amount every week, right? It might be that for some shippers, it was only feasible to ship at one point during the year or maybe a few points during the year. So, you wouldn't be entitled to full liquidated damages if they had breached that. You need to have some kind of a showing of how much it was reasonable for different shippers to space out their shipments, wouldn't you? Yeah, we agree. Yes, your honor. It's an annual commitment. It's not a... And so then what are the standards by which that kind of a thing would be judged? Like, how could this court do 27 trials to determine the feasibility of each shipper spacing out their shipments to a greater extent than they did? Well, actually, that's what in fact what would have to happen. I mean, if we got into this particular factual dispute, it would require 27 trials. In fact, the case as it was brought required 27 trials. This was consolidated for the purposes of this appeal. But how it would work is that there are busy seasons and there are quiet seasons and there's non-existent seasons. And on the busy seasons, the shippers would ship a lot more. On the quiet seasons, they might ship less. And on the non-existent seasons, they probably wouldn't ship anything at all. But whatever as far as possible may mean, and ship evenly as far as possible, it's not a best effort standard. It's as far as possible. So it would require proof that the shippers could not ship for whatever reason. Not necessarily that they didn't have cargo, but they just couldn't ship. So as far as we're concerned, that would be something on... Oh, so you're saying the standard is that they would have to show it was impossible for them to ship at an earlier time or to spread it out further. That's your view? That's my view. And I think for... And no matter how you look at it, Your Honor, having waited 11 months and still are down 68% of their contract commitment, it's now virtually impossible for them to meet the contract commitment. But all we're asking is... Each of them could still meet the contract commitment, right? Because as long as they ship under some cargo, whether or not you can actually ship it, they've met their minimum quantity commitment under the contract, right? They have, but the problem is they have to have 14-day in advance bookings. So they have to give us notice 14 days in advance. Right, so they would have had to give you notice nine days after you terminated the contracts. Well, actually, yes, they would have in order to ship on the very last ship. But the very last ship has 2,700 TEUs. And what they can't do, and that's the purpose of the ship evenly requirement is they can't tender every container of their MQC on the very last ship. If they all did that, it would be impossible for us to carry them and impossible for us to carry them on the last four voyages. But the contract doesn't require them to do anything in light of your capacity, right? If it's conceivable that they could tender the cargo on the last shipment, that would satisfy their obligation. The fact that you couldn't move at all doesn't alter their obligations, does it? Well, it does. I mean, if they tender everything, at the end, they've breached the evenly requirement. So as long as they're in compliance with their contract requirements and they've shipped more or less if we would have to roll the cargo over to the next ship, and we would not charge them MQCs. We anticipated all this, your honor. You wouldn't charge them the MQCs, right? Just to clarify. So as long as they tendered it, even if you couldn't move it on the last shipment, they still would have met their minimum quantity commitment. Correct. If they tendered or can provide evidence to the trial court that they would have tendered all of their MQC on that last ship. Yes, we would have, you know, we'd have to forgive whatever that volume was that they tendered. And that's been our position all along. We will forgive that. But what we can't forgive is vague references to saying, oh, we would have tendered. We anticipated this, your honor, and we served discovery requests of all the defendants directed to what shipments they had made on those last four voyages. What shipments they had lined up, which ones they would have made. We had very few discovery responses that had any meaningful responses outside of oral and pleading objections. And we had very few bookings that were recorded at the time. So I think... What's the difference between the as far as possible standard and the best effort standard require that's different from your articulation of the as far as possible standard? Well, the best effort standard has several different interpretations given to it by the courts. I mean, one standard would be with best efforts would be judged by one's own capabilities, you know, under those circumstances. I think as far as possible is more stringent than that. I mean, we didn't say best efforts as far as possible means, you know, as far as possible for you to do so. We know that the shippers shipped a lot of containers, some more than they shipped with us on other lines. I would respectfully submit that that alone demonstrates either a breach of both, a breach of best efforts and a breach of the as far as possible requirement. But you're saying it would breach both because then they're not using their best efforts. Although, of course, in that kind of a case, if they had shipped cargo with another shipper, but there was some reason that went with another shipper and they could have shipped other cargo with you that they plan to do in the future, then they'd be able to show it was consistent with their best efforts or with an obligation to do it as far as possible to do some shipments with would it not? Well, I think what we have to say is that they would have to at trial provide testimony as to how they satisfy the requirement of as well, if you use the trial court standard, which we disagree with best efforts or the standard written in the contract as far as possible, then the trial court is going to have to listen to the explanations they give and determine whether they satisfy the applicable standard. But what they can't do. What do you do with all of these New York state cases that are interpreting best efforts clauses? And maybe even if we thought there was as far as possible clause was something different than the best efforts clause, maybe would apply to such a clause, too, that say that when there aren't clear standards in the contract for governing what is the best effort, or maybe by extension, what is as far as possible that the New York courts won't enforce such a provision? Well, I would suggest that there is a standard here, the standard is evenly. I mean, that's that's the standard. It's not as if what you said, I think you I think you agreed with, I think you agreed with me a moment ago, that they're not actually required to ship evenly, they're only required to ship evenly, as far as possible, or to their best efforts. That is, if they have commercial reasons for only doing it during certain seasons, or doing it on a different schedule, then that would be totally consistent with the clause. But you'd have to make some kind of a showing. And so if the New York courts are worried about enforcing such a clause, when there aren't clear standards, I'm asking how we can find clear standards here for judging that kind of a thing. Well, let's let me be clear about our position. First, we're not saying that best efforts or as far as possible is a standard to modify the MQC. They committed to whatever it is 5000 containers. And at the end of the year, they have to ship 5000 containers, or they pay liquidated damages for that. The as far as possible only concerns the evenly requirement. And certainly are there. So so if, if they, if they shipped during the high commercial season, and they shipped a lot, but then they didn't ship anything else during the rest of the season. And then the contract comes to an end, they breach the MQC, the issue of as far as possible never comes into play. If, if the only time it comes into play is because we discontinued the service 11 months into the year, then the question is, and the only reason it comes into play is whether they would have been entitled to under the terms of the contract to ship their entire MQC or remaining MQC during that four week period. And our position is that yeah, if you prove you could have, have, if you prove that you would have had bookings for that, you know, then, then, then, you know, we will, you know, that then you'll get credit for that MQC, because we couldn't carry it. But, but that wouldn't be a violation. And if they prove that they had bookings, that wouldn't be a violation of, I mean, I sort of would think that if they didn't use their best efforts to ship it evenly, and yet, nevertheless, said we would have had bookings in the last couple of voyages, you would still think that that was a violation of the, of the evenly clause, would you not? Well, are you going to satisfy it as long as they said that they were going to ship it at the end? No, that would satisfy their MQC, but it would not satisfy ship evenly. If they all ship evenly, it jams, it jams the carrier up with few ships left. Yes, sir. You've reserved two minutes for rebuttal. We'll hear from your adversaries, Mr. Collins, and Mr. Chaffee, who I understand has split the time, seven minutes for Mr. Collins, three minutes for Mr. Chaffee. Mr. Collins. Thank you, Your Honor. Brendan Collins on behalf from GKG Law on behalf of approximately 20 of the services under the service contracts at issue on April 8th, 2011. Whatever euphemism it uses, whether they call it a permanent discontinuation of service, or whether they admit what it obviously was, a termination of the contract, there's no legitimate dispute that as of that date, April 20, April 8th, 2011, it stopped all services under the contract. Why was it, Mr. Collins, and maybe it's untrue, but why was it that there was still a substantial amount of shipping to be done, so to speak, and not more than 68% as of that time? Well, Your Honor, that's an individual issue, but for individual defendants, but the clear fact is as reflected in the record, and Your Honors don't need to address it in order to provide the relief we seek, but clearly the service was substandard. There's a number of misrepresentations that need to be clarified. First, they now for the first time say, oh, we only canceled the last few voyages, and the contract only provided for voyages from China to the U.S. No, that's simply not true. If you look at the actual service contract, Appendix A and B of those contracts specifically provide that Los Angeles is an origin and a destination, so they in fact canceled well in excess of a dozen sailings during the life of the contract. Their service was so poor that they themselves said, we can't seem to meet deadlines, there's so much delay that people are refusing to ship with us. They themselves, again, contemporaneous documents in their own admission. At the same time, at least on this record where there hasn't been an adjudication that there was a breach by TCC, you agree that if they hadn't terminated prior to the end of the contract term, if they had terminated at the end of April instead of that April 8th, such that your minimum quantity commitment would have kicked in, you don't dispute that you would have been on the hook for shipping the minimum quantity commitment or paying liquidated damages, do you? No, we do dispute that, Your Honor, because again, and again, that was in our motion for summary judgment, which the judge said there's certainly substantial evidence, but he said, well, there's a disputed question of fact that the fact that there's no dispute, they didn't have containers to ship for the first three months, so they actually were telling shippers, including... Which is why I wanted to bracket the idea that they had breached their end of the contract, because I agree that if TCC had breached its contract, then obviously you wouldn't say they had the obligation. But let's say we agree with the district court that there are fact questions on that, and we're not assuming that there's a breach of the contract by TCC. You would be obligated on this record, in the posture in which we're hearing the case now, to fulfill your minimum quantity commitment if there hadn't been termination within the contract term, right? Well, Your Honor, again, I think that there clearly was a determination. There's no question on that regard, so I think it's a clear record. But moreover, Your Honor, no, we presented evidence, and again, it's important to recognize if one goes back to look at the record, we presented clear evidence as to you canceled over 10 sailings. You couldn't provide containers. You didn't... Every ship your service was a, quote, disaster by their own admissions. Your Honor, under those circumstances... You think TCC breached their end of the bargain, and that means you didn't have an obligation to do the minimum quantity commitment even before the time of termination. That's correct, Your Honor, but under the term of the contract, if we do look at the annual contract, and we have an entire year to meet the... During the term of the contract to meet the MQC, they prevented us from doing so. Well, but there is that clause that says that you're going to ship evenly as far as possible, right? So doesn't that mean something? Well, Your Honor, I think we've cited the law, and Your Honor has noted it, that under clear New York law, which governs these contracts, best efforts, or as far as possible language, cannot override explicit contractual provisions. So here it says you have the life of the contract to meet the MQC, and the... Well, you have the life of the contract as long as you use your best efforts to spread it out evenly as far as possible, or whichever the standard is. I'm not sure there's a big difference between the two standards, but assuming... Let's just say best efforts, because that's what the district court said. So assuming you use your best efforts to spread it out, you can spread it out among the... You can wait until the very end as long as that's consistent with using your best efforts. But if you just sat on the cargo that you could have shipped earlier and waited until the very end of the contract term, that would not be using your best efforts, right? Well, Your Honor, I disagree, Your Honor, because... Well, just in terms of the burden, as the court below recognized, there's no evidence that we did not use our best efforts. They had the burden of proof on that, and we said we used our best efforts, and they failed to present any evidence in that regard. They're bound by that decision. Well, I mean, they do have... We do have this chart of all the shippers and how much was shipped by the time of termination. And I know it's an aggregate figure, but the figure is even more dramatic for some of the more of their annual shipments to make. I mean, is it really plausible that all the shippers using their best efforts to spread them out evenly throughout the year would end up with the great bulk of all of their shipments in the last couple voyages of the year? Well, Your Honor, again, it's eastbound and westbound, so it's the last, we would say, 10 voyages. But again, they're ignoring the evidence in the record that says, in fact, when one of the... They said they instructed some customers not to ship during the first three months because they didn't have containers. Also, one of the shippers that issued Topocean actually explicitly asked them, and this is in the record, would it be possible to ship it evenly divided by 52 on a weekly basis? TCC admitted that it couldn't do it. So what they're essentially saying now is you had an obligation to ship as evenly as possible on a essentially weekly basis, even though we admit we couldn't have handled it on a weekly basis. No law is going to provide... No contract should be construed in that fashion. And this is just... Is there any evidence that TCC complained when the shippers didn't ship on a weekly or relatively even basis before things blew up? What they said was they did send one letter saying, just a reminder, it may be tough to catch up on your MQC. Some of these, your numbers aren't great. So to ship it, try and catch up by the end of the year as you're required to do under the contract. It's important also to recognize, in that regard, as the blower court recognized, they actually had two contracts at issue. The litigation here is only under the annual contract, but there was also... They also had these weekly contracts, correct? Pardon me? They also had these weekly contracts that were... Exactly. ...objected, right? Exactly, your honor. So they knew... I mean, isn't that parole evidence or extrinsic evidence? Should we really read the one contract in light of the existence of some other contract? We have to read the contract you have on its own, don't we? Well, your honor, I think it just reinforces what it says is, I believe it's term five says, you have to... Oh no, term four, excuse me. You have to tender for shipment during the term of the contract. It doesn't specify any weekly obligation. But if you look at the same company... Based on my exchange with TCC's attorney just now, it doesn't seem like they're taking the that under the annual contract, you had to ship a certain amount weekly. It's just meant you had to use your best efforts or as far as possible to do it evenly, which might not be even at all. It just means that you have to do as much as you can do. That's a different obligation. It seems to me what you're saying is not that that provision is unenforceable, but that you actually used your best efforts to ship it evenly and you were just frustrated by TCC's inability to accommodate more even shipments. Is that right? Well, your honor, that's true. But I think it's important to look at term 20, because it says the current contract may be terminated by either party without penalty or further obligation. And now they're suing. And if they admit it's not a weekly obligation, then it becomes... Well, without penalty, they're suing based on a penalty, a liquidated damages clause. So that would render their basis for recovery nil. And then further obligation to the other party. The only further obligation to the party would exist if one assumes that there was a pre-existing obligation that already existed. There wasn't any pre-existing obligation. I'm sorry, Judge Menasche, do you have any more? Yeah, just one last question. I mean, if in fact, you did have an obligation to use your best efforts to ship evenly throughout the year, that could have been an obligation that kicked in before termination. So if you just sat on your cargo, even though using your best efforts, you would have shipped more cargo in the first half of the year, you would have violated that clause in the first half of the year, would you not have? Your Honor, there's no evidence that we did that, I would note. No, I submit, Your Honor, you have to look at the entire... I understand, it's a hypothetical, it's a hypothetical, but like in principle, at least there could have been a violation of that clause that occurred before termination. Your Honor, I don't want to concede too much, but I see where you're going. But I do think one needs to look at the entire record and say, if they had not prevented us from shipping for the first three months, if they hadn't canceled 10 voyages, there may have been an obligation to try and ship evenly. Again, it's a cyclical, trans-Pacific shipping is very cyclical, and that's why you get an annual MQC. Thank you, Mr. Collins. Mr. Jaffe? May it please the court, my name is Daniel Jaffe. I represent seven of the appellees in this case. And Your Honors, I'd like to focus on one particular point, but of course, I will, of course, respond to any inquiry. But as Mr. Collins just indicated, there were two facts. There was a voluntary termination of this agreement by TCC before the end of the scheduled term of the contract. And TCC proceeded to sue the appellees for minimum quantity commitments, not tender. This case is disposed of by the plain language of term 20 of the service contract, because this provision and this provision alone addresses the circumstances giving rise to this case. And those circumstances are whether and to what extent MQC obligations survive a termination by one of the parties to the contract before the end of the contract term. Term 20 provides in relevant part. First clause, this contract may be terminated by either party without penalty or further obligation to the other party under this contract on 30 days notice to the other party. That's right. I think that's the exchange I just had with the other counsel on your side, which is that that's true. There's no further obligation. But if some obligation had arisen under the contract before termination, you would still be liable for that, wouldn't you? Your Honor, yes. But that's where clause, the second clause of term 20 comes into play. And I think, Your Honor, if I may, I think I can answer your question better if you'll let me go through the second clause of term 20. The first clause states the general proposition of non-liability. Then the second clause begins with these two key words, provided, however, that if the shipper terminates the contract before the end of the contract period, having not rendered the minimum quantity, it shall be liable to pay all liquidated damages provided for in term 27. The second key words in this clause, in addition to the provided, however, language is having not rendered, not having not rendered up to that time. That that language isn't in there, Your Honor. It's having not rendered. And to me, that goes back to the position that what they're saying is, first of all, the provision... Well, I understand that they make an argument that you should be liable for the full liquidated damages. That's under their theory that there wasn't really a termination. But I'm going to put that aside for the time being. And in my exchange with Mr. Singleton, I think he acknowledged that if they're seeking damages for a breach of the best efforts or as far as possible clause, it would not be the full measure of liquidated damages. It would only be some measure of what the shipper would have shipped had they used their best efforts versus what they, in fact, did. I mean, wouldn't that be a different measure of damages that arise before the termination? It is a different... Your Honor, it is a different analysis of the case, which presumes that the contract was not terminated under Term 20. Because I guess my point, Your Honor, is that Term 20, contrary to TCC's position, is the only provision in the service contract that addresses the circumstances before the court in these cases. Specifically, it specifies the only circumstances under which the shipper's liability for its MQC is preserved. And... Okay, I understand. I understand this argument. So can I just ask, what do you think that you were agreeing to when you signed the as far as possible clause? What obligation does that put on a shipper? On the shipper, I think what it did on the shipper is the shipper was committing to a certain volume or quantity of cargo over a 12-month period. They were not committing to any discernible distribution quantity. And for the reasons that have already been argued to this court, as far as possible, or if you wanted to use the term best efforts, are not measurable and under New York contract law, are not enforceable, especially in the context when you have very definitive and clear provisions, such as Term 20. And if Your Honor, please... When you signed the contract, the shippers thought that that wasn't enforceable, and it was never going to be applied against them, and so they just let it in the contract. I didn't want to... I don't want to say it was something we certainly kept in mind, but also, if you look at what transpired in the circumstances, even TCC didn't take that shift evenly, seriously, because they informed our clients that we don't have the wherewithal at certain stages of this 12-month period to accept... Thank you. Thank you. Thank you very much. We'll hear a rebuttal from Mr. Singleton. Let me start with that last point. TCC sent a notice to all shippers in November of 2010, advising them of the MQC requirement that we intended to enforce the requirement, and that the shippers were behind on that requirement, and encouraging them to take steps to meet the requirement. TCC also added some new ports in China to assist. You never sent any kind of notice. You sent these notices with a view toward meeting the minimum quantity commitment by the end of the contract term, right? You never sent any kind of notice that said, well, it looks like you haven't been shipping a lot, and you have an need to ship X amount by X date, right? There's nothing like that in the record. We did. We did. Can you point me to that? That November letter. Hold on one second. I'm not going to be able to find it immediately, but it's referred to and quoted in my brief. Okay. I'll take a look. Yeah. Thank you. Thank you. The second point I want to make is that the court, suite of sponte, raised this best efforts requirement. Keep in mind that if the best efforts requirement is unenforceable, the ship evenly requirement is still in the contract. That was always in the contract. They still have that obligation, and if it's unqualified by best efforts, then it doesn't really help their position all that much. What the court heard- It's a clause to use your best efforts to ship evenly. I think the position would be that- That's right. Not to fulfill the MQC, but to ship evenly. That's exactly right. Mr. Singleton? Excuse me? Do you have any other further points, important points to make on rebuttal, Mr. Singleton? Just one quick point. All right. We'll wrap it up. Thank you. This district court's interpretation of this contract renders a nonsensical result for the following reason. If the defendants would have breached a little bit, just a little bit, so shortfall by 90%, we could have stayed in business, finished the contract, and there wouldn't be much question that subject to a fight over their performance defenses, we could have collected an MQC. But because they committed an egregious breach, crazy amount of underperformance, they're arguing now that we're not entitled to collect a penny. They breach a lot, they escape. They breach a little, we get to collect. That makes no sense. Thank you very much. The matter is submitted. We'll reserve the decision.